MORIAL, Judge
(concurring).
It is unnecessary to the determination of the issue here to decide whether or not plaintiff’s contention that the Commission is without authority to modify the request for racing dates has merit.
Within LSA-R.S. 4:141-4:181 the only guideline established by the legislature for the conduct of race meetings is found in LSA-R.S. 4:147, which provides:
“The commission shall carry out the provisions of this part, including the following duties:
“(1) To set the dates during which any race meeting may be conducted in any parish of this state and to prohibit the conduct of any race meeting having the same or overlapping dates for race meeting at race tracks within a radius of one hundred miles. * * * ”
Absent that condition, i. e., tracks “within a radius of one hundred miles” the statute has no standards or guidelines to be applied when the Commission, as here, is confronted with the applications of two obviously competing tracks, though not within “a radius of one hundred miles”, for overlapping dates. There is nothing in the statute vesting the Commission with the *658 broad, unharnessed power to prohibit overlapping dates except as set forth in LSA-R.S. 4:147.
The Commission in modifying Jefferson Downs’ application reduced the number of dates Jefferson Downs sought, while granting it a considerable number of dates that in fact overlap with the dates previously granted to Evangeline Downs at the August meeting of the Commission.
The legislature in creating the Racing Commission placed it in the saddle when it declared the legislative intent and public policy of this state.[1]
Conceding arguendo that the power to prohibit or modify an application for overlapping dates for race meetings at tracks outside a radius of one hundred miles is delegated to the Commission[2] by implication, then that decision as to whom a permit for racing dates will be given and what dates will be granted within the dates applied for is within the realm of the whims and caprices of a majority of the members of the Commission at any given time, since the statute lays down no standards, rules or regulations by which the Commission is to be guided.[3] Therefore, the Commission is invested with arbitrary and uncontrolled discretion that is in violation of equal protection of the law as an element of due process. LSA-Const. Article 1, § 2.
Reviewing the transcript of the proceedings before the Racing Commission in relation to the legislative intent and public policy of this state, I conclude that the Commission jumped the rail and acted arbitrarily. The Commission’s decision was not determined by any provision of the statute itself, but by the will of the Commission and without substantial reason.
I do not dispute that the members of the Commission may have certain expertise in the area of horse racing and it is permissi *659 ble for each to call into play his expertise in reaching' a decision. Nevertheless, there is no unlimited grant in the statute to employ such expertise where the legislative intent and public policy is declared in the statute and, where the decision reached by the boundless use of such expertise frustrates the legislative intent and public policy of the state.
For the foregoing reasons, I concur.

.LSA-R.S. 4:141
“It is the policy of the State of Louisiana in furtherance of its responsibility to provide revenues for the operation of state government for its people, to encourage forceful and honest state-wide control of horse racing for the public health, safety and welfare by safeguarding the people of this state against corrupt, incompetent, dishonest and unprincipled horse racing practices:
(1) To institute and maintain a program to encourage and permit development of the business of horse racing with parimutuel wagering thereon on a high plane.
(2) To institute and maintain a program to encourage and permit development of the breeding and ownership of race horses in the state.
(3) To institute and maintain a regulatory program for the business of racing horses, which program assures the protection of public health, safety and welfare, vesting with the commission forceful state-wide control of horse racing with full powers to prescribe rules and regulations and conditions under which all horse racing is conducted with wagering upon the result thereof within the state.”
LSA-R.S. 4:142
“It is the purpose of this Chapter to effectuate the policies set forth in R.S. 4:141 by providing for:
(1) A program to permit maximum development of the business of horse racing with pari-mutuel wagering thereon.
(2) A program to permit maximum development of the breadding and ownership of race horses in this state.
(3) A program of effective regulation of the business of horse racing and to promote the orderly conduct of horse racing. * * * ”

. LSA-R.S. 4:158
“ * * * On or before the first of May and the first of September of each year, after receipt of the applications the commission shall convene to consider the refusal or granting of the permits or licenses applied for. * * * ”

. LSA-R.S. 4:141(3) does empower the commission to “prescribe rules and regulations and conditions under which all horse racing is conducted” and LSA-R.S. 4:148 (A) states: “The commission shall make rules, regulations and conditions for the holding, conducting and operating of all race tracks, race meets and races held in this state and for the conduct of the racing industry of this state under this Part. * * * ” There is no indication in the record before us that the commission has adopted any rule, regulation or condition for such a situation as presented in this case or, if it has, that such rule was employed in the Racing Commission’s decision.